IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNA N.,[1]

           Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

           Defendant.

Case No. 3:22-cv-01618-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Deanna N. ("Plaintiff") brings this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court reverses the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATIONS**

Plaintiff was born on August 13, 1968, making her fifty years old on January 18, 2019, her alleged disability onset date.[2] (Tr. 14, 23, 34.) Plaintiff did not finish high school and has past work experience as a cleaner housekeeper and home health attendant. (*Id.* at 23, 37, 53-54.)

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have

PAGE 2 – OPINION AND ORDER

In her application, Plaintiff alleges disability due to hearing and vision impairments, arthritis, degenerative disc disorder, myofascial pain syndrome, chronic pain in her upper back and right shoulder, fibromyalgia, chronic migraines, major depressive disorder, and generalized anxiety disorder. (*Id.* at 333.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration. (*Id.* at 192, 197, 203, 206.) On May 10, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 209.) Plaintiff and impartial vocational experts ("VE") appeared and testified at initial and supplemental hearings before an ALJ on February 23, 2021, and August 5, 2021. (*Id.* at 31-71.)

On September 24, 2021, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 11-30.) On September 19, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-7.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if the claimant is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

---

a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of March 31, 2019 (Tr. 15, 17) reflects the date on which her insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before March 31, 2019, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

PAGE 3 – OPINION AND ORDER

process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 1148-49. The Commissioner bears the burden of proof at step five, where the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)). If the Commissioner fails to meet this burden, the claimant is disabled. *See Garrison*, 759 F.3d at 1011.

### III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 16-24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2019, the alleged onset date. (*Id.* at 17.) At step two, the ALJ determined that Plaintiff suffers from the following severe impairments: degenerative disc disease, chronic pain syndrome, right shoulder pain, and carpal tunnel syndrome of the right wrist. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 19.)

PAGE 4 – OPINION AND ORDER

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these limitations: (1) Plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally, (2) Plaintiff can stand or walk for six hours in an eight hour workday, (3) Plaintiff can sit for at least six hours in an eight hour workday, (4) Plaintiff can perform occasional reaching overhead and frequent reaching in all other directions bilaterally, (5) Plaintiff can perform frequent fingering and handling with the dominant right upper extremity, (6) Plaintiff can never climb ladders, ropes, or scaffolds, (7) Plaintiff can have no exposure to extremes of cold, (8) Plaintiff cannot operate a motor vehicle as part of the job duties, and (9) Plaintiff requires a sit-stand option. (*Id.*)

At step four, the ALJ found that Plaintiff could not perform her past work as a cleaner housekeeper and home health attendant. (*Id.* at 23.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, such as work as a cashier, marker, and router. (*Id.* at 24.)

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's testimony and by relying on erroneous vocational expert testimony. (Pl.'s Opening Br. ("Pl.'s Br.") at 1, 3, ECF No. 12.) As explained below, the Court concludes that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony. The Court therefore reverses the Commissioner's decision because it is based on harmful legal error.

### I.    PLAINTIFF'S SYMPTOM TESTIMONY

The ALJ held two hearings at which Plaintiff testified. (Tr. 31-71.) As relevant here, Plaintiff testified that she has stabbing and throbbing pain between her shoulder blades and in her neck, right shoulder, and right arm. (*Id.* at 56.) She described daily numbness and weakness in her right hand. (*Id.* at 37, 56, 61.) For example, Plaintiff explained that she cannot hold up her

PAGE 5 – OPINION AND ORDER

phone with her right arm and that she can only write or type for a few minutes at a time but cannot write a full letter. (*Id.* at 61-62.) She solicits help with going to the store because she is unable to lift items or load and unload a car. (*Id.* at 60.) Plaintiff testified that her daily activities include taking medications and resting. (*Id.* at 55.)

Plaintiff argues that the ALJ failed to address Plaintiff's symptom testimony about her right upper extremity impairments and did not provide clear and convincing reasons to discount that testimony. (Pl.'s Br. at 3.) The Court agrees.

### A.  Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B.  Analysis

There is no evidence of malingering here, and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 20.) The ALJ was therefore required to specify which testimony the ALJ found not credible and provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to do so here.

Plaintiff first argues that the ALJ "summarily ignored Plaintiff's statements regarding her inability to hold objects" without explicitly finding them not credible. (Pl.'s Br. at 6.) The Court agrees that the ALJ did not specifically address Plaintiff's testimony about her inability to hold objects with her upper right extremity but assumes for the purpose of the Court's analysis below that the ALJ's discounting of Plaintiff's symptom testimony was directed, at least in part, to Plaintiff's testimony about her inability to use her upper right extremity because of numbness, weakness, and pain. (Tr. 20-22, summarizing the medical evidence relating to Plaintiff's upper right extremity, including the normal results of a Nerve Conduction Study/Electromyography (EMG) showing no evidence of carpal tunnel syndrome, mild to moderate degenerative changes to her thoracic and cervical spine, a physical exam documenting right arm weakness and slight numbness, a physical exam documenting full range of motion in Plaintiff's right wrist and hand and negative Phalen and Tinel tests (related to carpal tunnel syndrome), an EMG revealing "[m]ild right carpal tunnel syndrome," a diagnosis of fibromyalgia, normal test and lab results, and no reports at chiropractic appointments of any "numbness, tingling or weakness" in Plaintiff's limbs; *id.* at 22, concluding, following the above summary, that "[o]verall, the objective evidence of record does not support the [Plaintiff's] allegations regarding the intensity and limiting effects of her symptoms" because "[p]hysical examination and diagnostic testing have revealed only mild or normal findings").

The ALJ discounted Plaintiff's symptom testimony because Plaintiff's conservative treatment for her back and neck pain was inconsistent with her allegations of disabling symptoms, and because the objective medical evidence of record does not support the intensity and limiting effects of her symptoms. (*Id.* at 21-22.) The Court agrees with Plaintiff that the ALJ's reasons for discounting Plaintiff's symptom testimony were legally insufficient. *See*

PAGE 7 – OPINION AND ORDER

*Miranda W. v. Saul*, 509 F. Supp. 3d 1270, 1280 (D. Or. 2020) ("[E]ven if the ALJ had identified which portions of Plaintiff's testimony [the ALJ] found not credible, the reasons [the ALJ] provided for rejecting Plaintiff's subjective symptom testimony were legally insufficient.").

### 1. Conservative and Effective Course of Treatment

The Commissioner argues that the ALJ properly discounted Plaintiff's testimony in part because of Plaintiff's conservative, yet effective, course of treatment.[3] (Def.'s Br. at 9, ECF No. 17.) The Court concludes that Plaintiff's course of treatment was neither conservative nor effective.

Evidence of conservative treatment can serve as a reason for discounting a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (quoting *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007))); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (affirming discounting of symptom testimony where the plaintiff's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

Here, the ALJ noted that Plaintiff was treated with chiropractic care and diclofenac sodium gel. (Tr. 21.) The ALJ then concluded that Plaintiff's "continued conservative treatment for her back and neck pain is not consistent with her allegations of disabling symptoms." (*Id.*) However, the ALJ failed to address that Plaintiff also received trigger point injections, was

---

[3] Plaintiff does not address the ALJ's discussion of Plaintiff's conservative treatment, perhaps because the ALJ cited conservative treatment to discount Plaintiff's allegations of neck and back pain but not her allegations of numbness and weakness in her upper right extremity. The Court addresses the ALJ's discussion of conservative treatment because the record reflects that Plaintiff's neck and back pain contributed to her upper right extremity limitations. (Tr. 55-57, 61-62, Plaintiff testified that she experiences pain between her shoulder blades and in her neck, shoulder, and arm on the right side, as well as nerve issues that cause numbness and weakness in her right hand, such that she cannot hold her phone or type with her right hand.)

referred to physical therapy, and was prescribed gabapentin, among other pain medications. (*See id.* at 525-26, 562-63, 605-06, 613, 888.) The Commissioner does not argue that trigger point injections and prescription pain medication constitute conservative care, and courts have generally concluded that they do not. See *Jennifer C. v. Kijakazi*, No. 6:20-cv-1160-SI, 2022 WL 843386, at *12 (D. Or. Mar. 22, 2022) (so noting and citing *Guzman v. Kijakazi*, No. 1:20-cv-0514-JLT, 2021 WL 6062645, at *9 (E.D. Cal. Dec. 22, 2021), collecting cases).

The Court concludes that Plaintiff's trigger point injections, in combination with her prescription pain medication, chiropractic care, prescribed gel, and physical therapy, is not conservative treatment and is a legally insufficient reason for discounting Plaintiff's symptom testimony. See *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (concluding that the ALJ erred by relying on the plaintiff's "conservative treatment, where [the ALJ] pointed to no evidence that [the plaintiff's] treatment, which included several pain medications and trigger point injections, was 'conservative'"); *Yolanda Estela H. v. Kijakazi*, No. 5:20-cv-00234-PD, 2021 WL 9031042, at *6 (C.D. Cal. Sept. 30, 2021) ("Plaintiff's trigger point injection treatment is also not conservative treatment."); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not."); cf. *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *2 (9th Cir. Dec. 27, 2022) ("In previous cases, we have indicated that epidural steroid injections might serve as a nonconservative treatment for fibromyalgia."); *Daniel J. B. v. Comm'r Soc. Sec. Admin.*, No. 3:21-cv-01303-AR, 2023 WL 2555466, at *4 (D. Or. Mar. 17, 2023) (concluding that epidural steroid injections, prescribed pain medications, physical therapy, chiropractic care, and acupuncture cannot fairly be characterized as "conservative").

///

The ALJ also cited improvement in Plaintiff's symptoms, although it is not clear if the ALJ discounted Plaintiff's testimony on this ground. (Tr. 21, noting three instances where Plaintiff's chiropractor reported that Plaintiff responded well to care and showed an increase in health and well-being; *id.* at 22, noting two instances where Plaintiff did not report numbness, tingling, or weakness in her limbs at chiropractic appointments.) If that was the ALJ's intent, the ALJ failed to specify and explain which evidence of improvement contradicted which portions of Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1270 (9th Cir. 2020) (concluding that the ALJ's observation that "medications have been relatively effective in controlling [the claimant's] symptoms" was an insufficient reason to discount the plaintiff's testimony); *see also Wade v. Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) ("Summarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing *reasons* to discredit that testimony.").

Further, improvement in symptoms as a basis for discounting Plaintiff's testimony is not supported by substantial evidence. Trigger point injections did not consistently alleviate her pain. (*See* Tr. 533, "Trigger points made her back feel worse this time.") Frequently, chiropractic care had limited results. (*See, e.g.*, *id.* at 661, on January 17, 2020, Plaintiff was "progressing slower than expected"; *id.* at 662, on January 24, 2020, Plaintiff reported her pain "has worsened since last visit"; *id.* at 680, on February 14, 2020, Plaintiff "reports feeling the same after treatment"; *id.* at 692, on May 30, 2020, Plaintiff's "mid back was sore after treatment last week"; *id.* at 910, 916, 922, on May 12, 2021, May 26, 2021, and July 7, 2021, Plaintiff was progressing more slowly than expected.) In March 2021, Plaintiff's provider reported, "Chronic shooting pain in right shoulder and arm is worsening" and Plaintiff "has tried physical therapy, chiropractor,

PAGE 10 – OPINION AND ORDER

acupuncture and trigger point injections with minimal relief." (*Id.* at 888.) The Court concludes that Plaintiff's treatment and its efficacy do not provide a clear and convincing reason to discount Plaintiff's symptom testimony. *See Daniel J. B.*, 2023 WL 2555466, at *4-5 (concluding that "plaintiff's treatment cannot fairly be characterized as 'conservative'" and the ALJ's analysis "fails to account for plaintiff's waxing and waning pain symptoms").

### 2. Objective Medical Evidence

Plaintiff argues that a lack of supporting medical evidence, standing alone, is a legally insufficient reason to discount her symptom testimony. (Pl.'s Br. at 8.) The Court agrees.

"[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)); *see also McClaren v. Saul*, 812 F. App'x 500, 501 (9th Cir. 2020) (noting that "inconsistencies with objective medical evidence . . . cannot provide the sole basis for an ALJ's credibility determination"); *Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (explaining that even "[a]ssuming that [the claimant's] testimony regarding her physical impairments was not supported by the objective medical evidence, the ALJ cannot properly rely on that as the sole reason to discredit her testimony" (citing *Burch*, 400 F.3d at 681)). Having found that the ALJ's only other reason to discount Plaintiff's testimony was legally insufficient, the lack of supporting medical evidence cannot be the only reason for discounting Plaintiff's symptom testimony. *See Christa W. v. Kijakazi,* No. 1:22-cv-01293-SB, 2023 WL 6972455, at *12 (D. Or. Oct. 23, 2023) ("[T]he lack of supporting or inconsistent objective medical evidence cannot provide the sole basis for discounting a claimant's testimony. Accordingly, the Court concludes that the ALJ committed harmful error." (citing *McClaren*, 812 F. App'x at 501, *Valdez*, 746 F. App'x at 677, and *Taylor*, 720 F. App'x at 907)); *Ortiz v. Berryhill*, No. 2:17-cv-06243-JDE, 2018 WL

PAGE 11 – OPINION AND ORDER

3655411, at *4 (C.D. Cal. July 31, 2018) (reversing and remanding where "[t]he only articulated reason for finding Plaintiff only partially credible was 'the medical records do not support the alleged severity of his symptoms'").

### C.     Conclusion

The ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's testimony.[4] On this record, the Court cannot conclude that the ALJ's error was harmless. *See, e.g.*, *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (noting that "[i]f the ALJ fails to specify [the] reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully" and, accordingly, "such error will usually not be harmless").

## II.    VOCATIONAL EXPERT TESTIMONY

Plaintiff also argues that the ALJ relied on erroneous VE testimony at step five. (Pl.'s Br. at 1.) The Court disagrees.

### A.     Applicable Law

Once a claimant satisfies the claimant's burden of proof at steps one through four, the Commissioner bears the burden of proof at step five. *See Lockwood*, 616 F.3d at 1071. The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).

---

[4] Plaintiff also suggests that the ALJ should have discounted the state agency medical consultants' opinions because the agency physicians did not have the benefit of updated medical records revealing Plaintiff's October 2020 diagnosis of mild carpal tunnel syndrome. (Pl.'s Br. at 12.) However, the ALJ acknowledged and discussed the mild carpal tunnel syndrome diagnoses, and the Court does not understand Plaintiff separately to argue that the ALJ failed to provide legally sufficient reasons to discount the medical opinions. Therefore, the Court does not separately address the state agency medical opinions.

PAGE 12 – OPINION AND ORDER

"If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary* [*of Occupational Titles* ("DOT")], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)). "Thus, the ALJ must first determine whether a conflict exists." *Massachi*, 486 F.3d at 1153. "If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*." *Id.*; *see also Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[A]n ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency.") (citations omitted).

"[T]he conflict must be 'obvious or apparent' to trigger the ALJ's obligation to inquire further." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (citing *Gutierrez*, 844 F.3d at 808). In other words, "not all potential conflicts between an expert's job suitability recommendation and the *Dictionary's* listing of 'maximum requirements' for an occupation will be apparent or obvious." *Gutierrez*, 844 F.3d at 807-08. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Id.* at 808. "Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.*

### B.   Analysis

The ALJ proposed a hypothetical to the VE that included "occasional overhead reaching, and frequent reaching in all other directions bilaterally." (Tr. 39.) The VE testified that an individual with the relevant restrictions could perform work as a cashier, marker, or router. (*Id.*

at 40.) The ALJ asked the VE whether the testimony was consistent with the DOT, and the VE responded "[y]es." (*Id.* at 41.)

Plaintiff argues that the VE's testimony is inconsistent with the DOT because the three jobs—cashier, marker, or router—require "frequent" reaching, and the DOT does not distinguish between overhead reaching and other forms of reaching. (Pl.'s Br. at 16.) Therefore, according to Plaintiff, the ALJ should have "recognized any potential conflict" and asked the VE to reconcile the conflict. (*Id.* at 17.)

The Ninth Circuit, however, has held that there is no obvious or apparent conflict in a like situation:

> Here, the ALJ didn't err because there was no apparent or obvious conflict between the expert's testimony that [the plaintiff] could perform as a cashier, despite her . . . overhead reaching limitations with her right arm, and the *Dictionary's* general statement that cashiering requires frequent reaching. While 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' SSR 85-15, 1985 WL 56857, at *7 (1985), not every job that involves reaching requires the ability to reach overhead. Cashiering is a good example.

*Gutierrez*, 844 F.3d at 808. The same is true for marker and router. *See Lisa F. v. Comm'r, Soc. Sec. Admin.*, No. 17-cv-1007-SI, 2018 WL 3727894, at *4 (D. Or. Aug. 6, 2018) ("[T]he DOT descriptions of price marker . . . do[es] not describe activities that obviously require overhead reaching. The DOT describes the job of price marker as requiring the following physical activities: tying, gluing, sewing or stapling price tickets to articles of merchandise, pressing levers or plungers of mechanisms that attach price tickets to articles of merchandise, packing articles of merchandise in boxes."); *Jeromy D. v. Comm'r of Soc. Sec.*, No. 20-cv-5570-MLP, 2021 WL 527918, at *4 (W.D. Wash. Feb. 12, 2021) (concluding that the ALJ did not err by failing to resolve any inconsistency between the DOT and the VE's testimony that a person

PAGE 14 – OPINION AND ORDER

limited to "seldom overhead reach" could perform the job of a router because "there is no conflict because overhead reaching is only one type, or subset, of reaching").

The Court concludes that the ALJ did not err because there was no apparent or obvious conflict between the VE's testimony that Plaintiff could work as a cashier, marker, and router and her overhead reaching restriction. *See Gutierrez*, 844 F.3d at 808.

### III.   REMEDY

Plaintiff asks the Court to remand for further administrative proceedings or an immediate award of benefits but provides no analysis of whether the credit-as-true standard is met here.[5] (Pl.'s Br. at 20.) The Court remands for further administrative proceedings.

#### A.   Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). In several cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citation omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as

---

[5] The Commissioner did not address the possibility of remanding for benefits because it appeared from Plaintiff's opening brief that she was seeking only a remand for further proceedings. (Def.'s Br. at 13 n.2, "Should the Court find reversible legal error, the Commissioner agrees with Plaintiff that the proper remedy would be further administrative proceedings.") Plaintiff did not file a reply.

true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted).

Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

### B.    Analysis

The Court remands Plaintiff's case for further administrative proceedings because the record has not been fully developed and further proceedings will be useful.

A district court may exercise its discretion to "remand for further proceedings if enhancement of the record would be useful." *Fahtima R. v. Comm'r of Soc. Sec.*, No. 18-5970-MJP, 2019 WL 2022461, at *4 (W.D. Wash. May 8, 2019) (citing *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000)). Plaintiff has not meaningfully argued that remand for an immediate award of benefits is appropriate here. *See Alicia D. v. Kijakazi*, No. 3:20-cv-01222-SB, 2022 WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must remand this case for further proceedings because Plaintiff has not met the credit-as-true standard (as she appears to acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL 888297 (D. Or. Mar. 25, 2022). Further proceedings would serve a useful purpose because the ALJ must evaluate Plaintiff's testimony about her right upper extremity limitations, formulate a new RFC, and obtain new VE testimony, and it is not clear that the ALJ would be required to find Plaintiff disabled on the current record. *See Patricia R. v. Kijakazi*, No. 6:20-cv-00909-SB, 2022 WL 832257, at *11 (D. Or. Mar. 21, 2022) (remanding for further proceedings for the ALJ to reevaluate the plaintiff's testimony when it was not clear that the ALJ would be required to find the plaintiff disabled (citing *Wade*, 850 F. App'x at 569-70)); *Tammy H. v. Kijakazi*, No. 3:21-cv-01374-SB, 2023 WL 355845, at *13 (D. Or. Jan. 23, 2023) (similarly concluding that further proceedings would be useful); *Graham v. Colvin*, No. 14-cv-5311-BHS, 2015 WL 509824, at *7-

PAGE 16 – OPINION AND ORDER

8 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings and explaining that although the ALJ erred in discounting the claimant's testimony, the claimant did not challenge certain conflicting medical opinions and thus there were outstanding issues in the record about the extent of the claimant's limitations).

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 28th day of November, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 17 – OPINION AND ORDER